Cite as 2018 Ark. 12

# SUPREME COURT OF ARKANSAS

**No.** CV–17–168

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ARKANSAS<br><br>        **APPELLANT**<br><br>V.<br><br>MATTHEW ANDREWS<br><br>        **APPELLEE** | **Opinion Delivered:** January 18, 2018<br><br>APPEAL FROM THE POLK COUNTY CIRCUIT COURT [NO. CV-2013-192]<br><br>HONORABLE JERRY RYAN, JUDGE<br><br><u>REVERSED AND DISMISSED</u>. |

**JOHN DAN KEMP, Chief Justice**

Appellant, The Board of Trustees of the University of Arkansas (Board), filed this interlocutory appeal of an order of the Polk County Circuit Court denying a motion to dismiss an action brought by appellee Matthew Andrews for violations of the overtime provisions of the Arkansas Minimum Wage Act, codified at Arkansas Code Annotated sections 11-4-201 to –222 (Repl. 2012 & Supp. 2017). For reversal, the Board argues that the circuit court erred in denying Andrews's motion to dismiss because the doctrine of sovereign immunity applies. Pursuant to Arkansas Supreme Court Rule 1-2(a)(1) (2017), we have jurisdiction of this appeal because it involves our interpretation of the Arkansas Constitution. We reverse and dismiss.

## I. *Facts*

Rich Mountain Community College (RMCC), a publicly-funded, nonprofit college in Mena, employed Andrews as a bookstore manager from November 15, 2010, through

May 9, 2013.[1] His salary was $26,824 per year. When Andrews began working for the college, he received compensation time for any hours worked beyond his average forty-hour work week. According to Andrews, his "comp time stopped" in August 2011. RMCC classified him as exempt from the overtime requirements set forth in the federal Fair Labor Standards Act (FLSA) and the Arkansas Minimum Wage Act (AMWA). RMCC terminated Andrews for insubordination in May 2013.

On November 14, 2013, Andrews filed a complaint against RMCC pursuant to the AMWA for failing to compensate him for working overtime. On January 29, 2014, Andrews filed a first amended and substituted complaint, alleging violations of the overtime provisions of the AMWA and seeking overtime and liquidated damages. In his prayer for relief, he requested (1) the entry of a declaratory judgment that RMCC's pay practices violated the AMWA; (2) the entry of a judgment for damages for all unpaid regular rate and overtime compensation under the AMWA; (3) an award of liquidated damages pursuant to the AMWA; (4) the entry of a judgment for punitive damages owed to Andrews pursuant to the Arkansas Civil Justice Reform Act in an amount to be proven at trial; (5) the entry of a judgment for any and all civil penalties to which Andrews may be entitled; and (6) an order directing RMCC to pay Andrews prejudgment interest, attorney's fees, and costs.

RMCC answered and pleaded sovereign immunity as an affirmative defense. The parties filed cross motions for summary judgment, which the circuit court denied. Subsequently, on August 18, 2016, RMCC filed a motion to dismiss Andrews's complaint,

---

[1] On February 1, 2017, RMCC became a part of the University of Arkansas System. The circuit court took judicial notice of the merger and ordered that the Board be substituted as the defendant.

arguing that Andrews's claim under the AMWA was barred by sovereign immunity, pursuant to article 5, section 20 of the Arkansas Constitution. RMCC asserted that the General Assembly did not have the authority to abrogate the State's sovereign immunity in the AMWA.

On September 14, 2016, the circuit court conducted a hearing on RMCC's motion to dismiss and heard arguments from both parties. The circuit court subsequently issued a letter order denying RMCC's motion to dismiss. The circuit court ruled that "RMCC has [not] met its burden of demonstrating that the provision of the Arkansas Minimum Wage Act as it applies to Andrews is unconstitutional" and that the State may be sued for violations of the AMWA. In an order entered October 24, 2016, the circuit court memorialized these findings, denied RMCC's motion to dismiss, and found that RMCC was "not entitled to sovereign immunity as it relates to [Andrews's] claims under the AMWA." RMCC filed a motion for reconsideration; the motion was deemed denied. RMCC appeals.

## II. *Sovereign Immunity*

For the sole point on appeal, RMCC argues that the circuit court erred in denying its motion to dismiss. Specifically, RMCC claims that section 11-4-218(e), as it applies to Andrews, is unconstitutional because it violates article 5, section 20 of the Arkansas Constitution. RMCC contends that the Arkansas Constitution does not authorize the General Assembly to waive the State's sovereign immunity. RMCC argues that this court's case law that recognizes a legislative waiver as an exception to sovereign immunity is not consistent with our constitution.

Andrews responds that the circuit court properly denied RMCC's motion to dismiss because the General Assembly's abrogation of sovereign immunity in the AMWA is constitutional. Andrews claims that the sovereign-immunity exception applies because the plain language of section 11-4-218 demonstrates that the intent of the General Assembly allows for a right of action against the State.

## A. Interlocutory Appeal and Standard of Review

Rule 2(a)(10) of the Arkansas Rules of Appellate Procedure–Civil permits an appeal from an interlocutory "order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity or the immunity of a government official." The rationale behind this rule is that immunity from suit is effectively lost if the case is permitted to go to trial when an immunity argument can prevail. *Ark. Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, 386 S.W.3d 400.

We generally review a circuit court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and by viewing them in the light most favorable to the plaintiff. *Kennedy v. Ark. Parole Bd.*, 2017 Ark. 234. When the circuit court is presented with documents outside the pleadings, we treat the case as an appeal from a summary judgment and view the evidence in the light most favorable to the party opposing the motion. *Bayird v. Floyd*, 2009 Ark. 455, 344 S.W.3d 80. However, when the issues on appeal do not involve factual questions but rather the application of a legal doctrine, we simply determine whether the moving party is entitled to judgment as a matter of law. *Id.*, 344 S.W.3d 80.

## B. Doctrine of Sovereign Immunity

4

The Board moved to dismiss Andrews's action based on sovereign immunity. Article 5, section 20 of the Arkansas Constitution provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." Sovereign immunity is jurisdictional immunity from suit, and jurisdiction must be determined entirely from the pleadings. *See LandsnPulaski, LLC v. Ark. Dep't of Corr.*, 372 Ark. 40, 269 S.W.3d 793 (2007); *Clowers v. Lassiter*, 363 Ark. 241, 213 S.W.3d 6 (2005); *Ark. Tech Univ. v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000). A suit against the State is barred by the sovereign-immunity doctrine if a judgment for the plaintiff will operate to control the action of the State or subject it to liability. *Ark. State Med. Bd. v. Byers*, 2017 Ark. 213, 521 S.W.3d 459.

This court has held that the Board is an instrumentality of the State and is immune from suit. *See Washington Cty. v. Bd. of Trs.*, 2016 Ark. 34, 480 S.W.3d 173 (holding that the university is an instrumentality of the State and that it was immune from ad valorem taxation); *Bd. of Trs. v. Burcham*, 2014 Ark. 61 (holding that Burcham's wrongful-termination complaint was barred by sovereign immunity and that a sovereign-immunity exception did not apply).

This court has held that the doctrine of sovereign immunity is rigid but that it may be waived in limited circumstances. *Office of Child Support Enf't v. Mitchell*, 330 Ark. 338, 954 S.W.2d 907 (1997). This court has recognized that a claim of sovereign immunity may be surmounted in the following three instances: (1) when the State is the moving party seeking specific relief; (2) when an act of the legislature has created a specific waiver of sovereign immunity; and (3) when the state agency is acting illegally or if a state agency

officer refuses to do a purely ministerial action required by statute. *Ark. Dep't of Cmty. Corr. v. City of Pine Bluff*, 2013 Ark. 36, 425 S.W.3d 731.

C. Arkansas Constitution and Applicable Case Law

In determining whether the Board is entitled to judgment as a matter of law, we provide a brief history of the doctrine of sovereign immunity in the Arkansas Constitution. Originally, in 1868, the Arkansas Constitution read, "The general assembly shall direct by law in what manner and in what courts suits may be brought by and against the state." Ark. Const. of 1868, art. 5, § 45. However, in 1874, the people passed what was the fifth and current version of the Arkansas Constitution. It altered the previous language and stated that "[t]he State of Arkansas shall never be made a defendant in any of her courts." Ark. Const. art. 5, § 20.

Subsequently, in 1935, this court considered the issue of whether the legislature could waive the State's sovereign immunity. *See Ark. Hwy. Comm'n v. Nelson Bros.*, 191 Ark. 629, 87 S.W.2d 394 (1935). This court stated, "It is our settled conviction that the state cannot give its consent to the maintenance of an action against it." *Id.* at 636, 87 S.W.2d at 397. This court followed that precedent in *Fairbanks v. Sheffield*, 226 Ark. 703, 292 S.W.2d 82 (1956), by stating that a statute allowing suit against the state park system was "an unconstitutional attempt on the part of the legislature to consent to a suit against the State." *Id.* at 706, 292 S.W.2d at 84. In *Fairbanks*, this court held that article 5, section 20 was "mandatory and cannot be waived by the General Assembly." *Id.* at 706, 292 S.W.2d at 84. Again, in 1993, this court held that a statutory requirement for DHS to make restitution to foster parents who sustained damage to their property by juveniles in DHS's

6

legal custody was prohibited by the doctrine of sovereign immunity under article 5, section 20. *See Dep't of Human Servs. v. State*, 312 Ark. 481, 850 S.W.2d 847 (1993).

This court adhered to this principle for over sixty years until 1996 in *Arkansas Department of Finance & Administration v. Staton*, 325 Ark. 341, 942 S.W.2d 804 (1996), and in *Arkansas Department of Finance & Administration v. Tedder*, 326 Ark. 495, 932 S.W.2d 755 (1996). In both cases, Arkansas Code Annotated section 26–18–507(e)(2)(A) (Repl. 1992) specifically granted legislative permission to a taxpayer to sue the State after a claim for refund had been filed and refused or the Commissioner had not acted upon it. In *Staton*, this court held that because that sole taxpayer had complied with the statute, the State's sovereign immunity was waived as to her. *Staton*, 325 Ark. at 347, 942 S.W.2d at 806. In *Tedder*, this court reached a similar conclusion, holding that because the proposed class of taxpayers had not complied with section 26-18-507, only the named class representative could maintain a suit against the State. This court stated,

> Our constitution generally prohibits suits against the state. Ark. Const. art. 5, § 20. However, Ark. Code Ann. § 26-18-507(e)(2)(A) (Repl. 1992) permits a taxpayer to sue the state for an improperly collected sales tax only after a refund has been sought and refused or the Commissioner has not acted upon the taxpayer's request. Since Mr. Tedder is the only taxpayer who had requested a refund and had his application denied, the Department claims that the chancery court did not have subject-matter jurisdiction over the remaining members of the proposed class. In *State v. Staton*, 325 Ark. 341, 934 S.W.2d 478 (1996) (substituted opinion granting rehearing), we resolved this issue in the Department's favor. Recognizing strong fiscal public policy concerns, we held that full compliance with the statute is necessary before sovereign immunity is waived.

*Tedder*, 326 Ark. at 496, 932 S.W.2d at 756.

### C. Applicable Statutes and Statutory Construction

In 2006, the General Assembly enacted a provision allowing employees to file suit against the State in AMWA actions. Acts of 2006 (1st Ex. Sess.), Act 15, § 5, eff. Oct. 1, 2006; Acts of 2006 (1st Ex. Sess.), Act 16, § 5, eff. Oct. 1, 2006. Subsequently, in 2014, Andrews filed his amended complaint alleging violations of the AMWA, which provides in relevant part,

> (e)(1) *An employee may bring an action for equitable and monetary relief against an employer, including the State of Arkansas or a political subdivision of the state, if the employer pays the employee less than the minimum wages, including overtime wages, to which the employee is entitled under or by virtue of this subchapter.*
> (2) If the employee brings an action under this subsection, then any complaint before the director by the employee on the same matter shall be dismissed with respect to that employee.
> (3)(A) The employee shall not be required to exhaust administrative remedies before bringing an action.
> (B) There shall be no procedural, pleading, or burden of proof requirements beyond those that apply generally to civil suits in order to maintain the action.

Ark. Code Ann. § 11-4-218(e) (emphasis added). "Employer" is defined as "the State of Arkansas" or "any political subdivision of the state[.]" Ark. Code Ann. § 11-4-203(4)(A).

We review issues of statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Ark. Dep't of Corr. v. Shults*, 2017 Ark. 300, 529 S.W.3d 628. In the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. *Id.*, 529 S.W.3d 628. The primary rule of statutory interpretation is to give effect to the intent of the legislature. *Id.*, 529 S.W.3d 628. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*, 529 S.W.3d 628.

If we apply our post-1996 caselaw, the plain language of section 11-4-218(e) would qualify as an exception to sovereign immunity because it contains an express waiver created

8

by the legislature. Subsection (e)(1) allows for "an action for equitable and monetary relief" against the State of Arkansas "or a political subdivision of the State" for violations of the AMWA, and this court has held that the Board is an instrumentality of the State. *State Comm'r of Labor v. Univ. of Ark. Bd. of Trs.*, 241 Ark. 399, 407 S.W.2d 916 (1966). However, the Board contends that this statutorily created waiver violates the Arkansas Constitution.

This court begins with the axiom that every act carries a strong presumption of constitutionality. *Ark. Dep't of Corr. v. Bailey*, 368 Ark. 518, 247 S.W.3d 851 (2007). As the party challenging the legislation, it is the Board's burden to prove its unconstitutionality, and all doubts will be resolved in favor of the statute's constitutionality, if it is possible to do so. *Rose v. Ark. State Plant Bd.*, 363 Ark. 281, 213 S.W.3d 607 (2005). An act will be struck down only when there is a clear incompatibility between the act and the constitution. *Id.*

D. Analysis

The key question on appeal is whether there is a clear incompatibility between section 11-4-218 and article 5, section 20 of the Arkansas Constitution. We conclude that there is a clear incompatibility between section 11-4-218(e) and our state constitution.

In the case at bar, the circuit court relied in its letter order on *Jacoby v. Arkansas Department of Education*, 331 Ark. 508, 962 S.W.2d 773 (1998), in denying RMCC's motion to dismiss. In *Jacoby*, employees of the Arkansas Department of Education filed suit against the department in state court alleging violations of the FLSA and claiming that the department failed to pay them. The department moved to dismiss for lack of subject-matter jurisdiction, arguing that Congress could not abrogate the Eleventh Amendment guarantee of sovereign immunity. The circuit court granted the motion to dismiss on sovereign-

9

immunity grounds, but we reversed and remanded, holding that the Eleventh Amendment did not provide the State with sovereign immunity from FLSA claims in state courts. *Id.*, 962 S.W.2d 773.

The Supreme Court of the United States, in *Alden v. Maine*, 527 U.S. 706 (1999), abrogated *Jacoby*. In *Alden*, a group of probation officers in Maine filed suit against their employer, the State, alleging that the State violated provisions of the FLSA. The lower federal and state courts dismissed based on sovereign immunity. The Supreme Court granted certiorari and recognized that the Maine Supreme Judicial Court's opinion conflicted with this court's *Jacoby* opinion. The Court held that Congress cannot subject a State to an action in state court without its consent. *Id.* at 758.

We reverse the circuit court's ruling for the following reasons. First, this appeal involves a question of state constitutional law. In *Jacoby*, this court applied federal constitutional law to a federal statute. *Jacoby* does not apply to the case at bar. The present case concerns our interpretation of the validity of section 11-4-218(e) vis-à-vis article 5, section 20 of the Arkansas Constitution. Thus, the circuit court's reliance on *Jacoby* was in error.

Second, we acknowledge that the General Assembly enacted the AMWA and allowed "an action for equitable and monetary relief against [the State]." Ark. Code Ann. § 11-4-218(e). Nevertheless, we conclude that the legislative waiver of sovereign immunity in section 11-4-218(e) is repugnant to article 5, section 20 of the Arkansas Constitution. In reaching this conclusion, we interpret the constitutional provision, "The State of Arkansas shall never be made a defendant in any of her courts," precisely as it reads. The drafters of

our current constitution removed language from the 1868 constitution that provided the General Assembly with statutory authority to waive sovereign immunity and instead used the word "never." *See* Ark. Const. of 1868, art. 5, § 45; Ark. Const. art. 5, § 20. The people of the state of Arkansas approved this change when ratifying the current constitution. The General Assembly does not have the power to override a constitutional provision. To the extent section 11-4-218(e) directly contradicts the constitution, it must fail.

Third, under the doctrine of stare decisis, we cannot ignore six decades of this court's precedent prior to *Staton*. In *Nelson Brothers*, we stated,

> The human element in legislatures and courts, following a natural impulse, abhors an injustice perpetrated without a forum in which the right denied or the wrong suffered may be asserted or redressed. Therefore, we find legislatures devising means for the assertion of rights or the redress of wrongs even when the state is involved and the courts are as sensitive to such impulse as the legislatures. On that account laws are often enacted and decisions rendered to effectuate abstract justice, but which on no just grounds can be sustained except by unsound or specious reason. An apt illustration of this is found in the cases which we have reviewed. It is with reluctance that we have undertaken this review, but we are impelled by the conviction that these decisions are wrong. We realize that the overruling of a decision has a tendency to render the laws of the state less certain. In this case, however, to adhere to our former decisions would be, as we conceive it, nothing short of judicial usurpation. It is our settled conviction that the state cannot give its consent to the maintenance of an action against it and the court below was without jurisdiction. No one has a vested right to sue the state even when that privilege may be, and has been, given; it may be withdrawn even where a suit has been commenced without disturbing any vested right. *Beers, Use of Platenius v. State of Arkansas*, 20 How. 527, 15 L. Ed. 991. "The plaintiff cannot complain because the court overrules its former decision, even though that decision permitted the plaintiff to maintain its suit similar to the one now before us." *Pitcock v. State*, [91 Ark. 527, 121 S.W. 742 (1909)].

*Nelson Bros.*, 191 Ark. at 636–37, 87 S.W.2d at 397. We conclude that *Nelson Brothers*, *Fairbanks*, and *Arkansas Department of Human Services* are the correct precedent for this court to follow in its conclusion that the General Assembly cannot waive the State's immunity

11

pursuant to article 5, section 20. To the extent that other cases conflict with this holding, we overrule those opinions.

Further, this court has held that suits subjecting the State to financial liability are barred by sovereign immunity and that plaintiffs like Andrews with these causes of actions have a "proper avenue for redress against State action, which is to file a claim with the Arkansas Claims Commission." *Univ. of Ark. for Med. Scis. v. Adams*, 354 Ark. 21, 25, 117 S.W.3d 588, 591 (2003); *see also* Ark. Const. Art. 2, § 13 (stating that "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character").

### III. *Additional Arguments*

Andrews raises additional arguments that (1) article 2 trumps article 5, and thus the State must be answerable in court to claims at law for violations of the AMWA, and (2) any application of sovereign immunity has been waived.

We do not address these arguments. Here, the circuit court did not specifically rule on these issues in either its letter order or its final order. This court has been clear that it will not presume a ruling from the circuit court's silence, and we have held that we will not review a matter on which the circuit court has not ruled. *Alpha Mktg.*, 2012 Ark. 23, 386 S.W.3d 400.

### IV. *Conclusion*

For the foregoing reasons, we hold that the circuit court erred as a matter of law in denying the Board's motion to dismiss because it lacked jurisdiction over Andrews's AMWA claim pursuant to the doctrine of sovereign immunity. Accordingly, we reverse and dismiss.

*See, e.g., Burcham*, 2014 Ark. 61 (reversing and dismissing because a sovereign-immunity waiver did not apply).

Reversed and dismissed.

Special Justice CHAD PEKRON joins in this opinion.

BAKER and HART, JJ., dissent.

GOODSON, J., not participating.

**KAREN R. BAKER, Justice, dissenting.** I must dissent from the majority's decision to hold that the legislative waiver of sovereign immunity found in the Arkansas Minimum Wage Act is unconstitutional. The majority's opinion is patently flawed for several reasons.

First, the majority's holding yields the untenable position that while private employers are required to pay their employees minimum wage, the State may forgo paying its employees the required minimum wage. By way of example, when an act is passed by the legislature or more specifically, when the citizens of Arkansas pass an act to increase the minimum wage, pursuant to the act, private employers are required to compensate their employees in compliance with the act. However, as a result of the majority's holding, the Minimum Wage Act is no longer applicable to the State. Thus, if the State pays its employees below the required minimum wage threshold, State employees will have no available recourse because there is no longer a right to enforce the Act against the State.

Second, the majority opinion appears to attempt to limit its holding to only legislative waivers of sovereign immunity; however, its holding is much more far-reaching. Article 5, section 20 states that "[t]he State of Arkansas shall never be *made* defendant in any of her courts." Ark. Const. art. 5, § 20. (emphasis added). The word "made" is the past participle

13

of the word "make." *Merriam-Webster's Collegiate Dictionary* (9th ed.) (1991). *Webster's* lists twenty-five definitions for the word "make." One of these definitions is to "to cause to be or cause to become." Another definition is "to cause to act in a certain way: compel." I submit that the drafters of the constitution intended for "made" to mean the latter, to "compel." Any other interpretation of "made" would render *any* waiver of sovereign immunity—by the executive, legislative or judicial branch—impossible. Thus, we could not hold that the State waives sovereign immunity: by the executive branch, through the attorney general seeking relief or by bringing suit; by a legislative act; or by the judicial branch through postconviction rules. However, if the word "made" means to compel, then the State can *allow* itself to be sued in those situations. Further, the majority's attempt to limit its holding to money judgments is disingenuous to the literal text of article 5, section 20. If the majority is holding that "made" means to "cause to become," then the text of article 5, section 20 should be read to mean that the State cannot be caused to be a defendant in any of her courts. Absent from our constitution is any language limiting sovereign immunity to money judgments. The majority's holding that the legislature may no longer waive sovereign immunity, necessarily means that the executive and judicial branches likewise may not waive sovereign immunity because any other interpretation would result in treating the legislature differently from the executive and judicial branches. For each branch to operate as envisioned by the constitution, one branch must not be subordinated to either or both of the other branches, and one branch must not take control of one or both of the other branches. *City of Lowell v. M & N Mobile Home Park, Inc.*, 323 Ark. 332, 916 S.W.2d 95 (1996).

Third, the majority declines to address Andrews's arguments regarding article 2 because the circuit court failed to specifically rule on this issue. However, the Arkansas Constitution must be considered as whole, and every provision must be read in light of other provisions relating to the same subject matter. *Gatzke v. Weiss*, 375 Ark. 207, 289 S.W.3d 455 (2008) (citing *Foster v. Jefferson Cty. Quorum Ct.*, 321 Ark. 105, 901 S.W.2d 809 (1995)). Because of the majority's holding, specific sections of article 2 now conflict with article 5. Section 1 governs the authority of the government and states that "[a]ll political power is inherent in the people and government is instituted for their protection, security and benefit; and they have the right to alter, reform or abolish the same, in such manner as they may think proper." Ark. Const. art. 2, § 1. Section 7 governs the right to a trial by jury and states that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law[.]" *Id*. § 7. *See Tilley v. Malvern Nat'l Bank*, 2017 Ark. 343. Section 13 states that "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase; completely, and without denial; promptly and without delay; conformably to the laws." *Id*. § 13. Section 29 states that "[t]his enumeration of rights shall not be construed to deny or disparage others retained by the people; and to guard against any encroachments on the rights herein retained, or any transgression of any of the higher powers herein delegated, we declare that everything in this article is excepted out of the general powers of the government; and shall forever remain inviolate; and that all laws contrary thereto, or to the other provisions herein

15

contained, shall be void." *Id.* § 29. However, because of the manner in which the majority has interpreted article 5, the holding clearly violates the above-cited article 2 provisions.

Fourth, after citing the 1874 constitution, the majority states, "Subsequently, in 1935, this court considered the issue of whether the legislature could waive the State's sovereign immunity. *See Ark. Hwy. Comm'n v. Nelson Bros.* 191 Ark. 629, 87 S.W.2d 394 (1935). This court stated, 'It is our settled conviction that the state cannot give its consent to the maintenance of an action against it.'" The majority implies that this was the first post-1874 case in which it considered the issue of sovereign immunity. However, when presented with this issue in 1932, this court allowed the suits to proceed since two justices believed the suits were not against the State and two believed the State could consent to be sued. *See* L. Scott Stafford, *Separation of Powers and Arkansas Administrative Agencies: Distinguishing Judicial and Legislative Power*, U. Ark. Little Rock L. Rev. 279 (1984). In *Arkansas Highway Commission v. Dodge*, the court explained:

> It will be seen that out of the conflicting views of a majority of the several members of the court a very definite result has been reached; *i.e.*, that in a proper case the highway commission may be sued when authority for the bringing of the suit may be found in the statute . . . we now hold that, in all cases where the statute authorizes a suit, it may be maintained against the highway commission whether it be thought to be a juristic person or whether section 20, art. 5, be merely declaratory of the general doctrine that the state may not be sued in her courts unless she has consented thereto.

186 Ark. 640, 133–34, 55 S.W.2d 71, 73 (1932), *overruled in part by Ark. Hwy. Comm'n v. Nelson Bros.*, 191 Ark. 629, 87 S.W.2d 394 (1935). Thus, subsequent to the adoption of our current constitution, the doctrine of sovereign immunity has been interpreted at least three different ways.

16

Fifth, the majority states that "under the doctrine of stare decisis, we cannot ignore

six decades of this court's precedent prior to *Staton*." However, the same can be said with

regard to our over twenty years of precedent set forth in *Staton* and *Tedder*. In *Chamberlin*

*v. State Farm Mutual Auto Insurance Company*, 343 Ark. 392, 36 S.W.3d 281 (2001), this

court described the dictates of stare decisis as follows:

> Under the doctrine of stare decisis, we are bound to follow prior case law. The policy
> of stare decisis is designed to lend predictability and stability to the law. It is well-
> settled that "[p]recedent governs until it gives a result so patently wrong, so manifestly
> unjust, that a break becomes unavoidable." Our test is whether adherence to the rule
> would result in "great injury or injustice."

(Internal citations omitted.) Pursuant to *Chamberlain*, the majority has failed to demonstrate

that our precedent set forth in *Staton* is "patently wrong" or "manifestly unjust." Instead,

the majority's decision, in a perfunctory fashion, overhauls over twenty years of our well-

established law on sovereign immunity and has effectively revived the antiquated doctrine

that "the king can do no wrong."[2] By focusing solely on *Staton* and *Tedder*, the majority's

---

[2] Since *Staton* and *Tedder*, we have consistently recognized an exception to the
doctrine of sovereign immunity where an act of the legislature has created a specific waiver
of immunity. *See Ark. State Med. Bd. v. Byers*, 2017 Ark. 213, 521 S.W.3d 459; *Lenard v. Kelley*, 2017 Ark. 186, 519 S.W.3d 682; *Ark. State Police Ret. Sys. v. Sligh*, 2017 Ark. 109, 516 S.W.3d 241; *Kelley v. Johnson*, 2016 Ark. 268, 496 S.W.3d 346; *Johnson v. Butler*, 2016 Ark. 253, 494 S.W.3d 412; *Duit Constr. Co., Inc. v. Ark. State Claims Comm'n*, 2015 Ark. 462, 476 S.W.3d 791; *Ark. Dep't of Human Servs. v. Fort Smith Sch. Dist.*, 2015 Ark. 81, 455 S.W.3d 294; *Smith v. Daniel*, 2014 Ark. 519, 452 S.W.3d 575; *Ark. State Claims Comm'n v. Duit Constr. Co., Inc.*, 2014 Ark. 432, 445 S.W.3d 496; *Crossno v. Felts*, 2014 Ark. 262 (per curiam); *DuBois v. Hobbs*, 2014 Ark. 259 (per curiam); *Mitchem v. Hobbs*, 2014 Ark. 233 (per curiam); *Bd. of Trs. v. Burcham*, 2014 Ark. 61; *Kiesling-Daugherty v. State*, 2013 Ark. 281; *Ark. Lottery Comm'n v. Alpha Mktg.*, 2013 Ark. 232, 428 S.W.3d 415; *Ark. Dep't of Cmty. Corr. v. City of Pine Bluff*, 2013 Ark. 36, 425 S.W.3d 731; *Ark Game & Fish Comm'n v. Eddings*, 2011 Ark. 47, 378 S.W.3d 694; *Ark Dep't of Envtl. Quality v. Al-Madhoun*, 374 Ark. 28, 285 S.W.3d 654 (2008); *Jones v. Flowers*, 373 Ark. 213, 283 S.W.3d 551 (2008); *Weiss v. McLemore*, 371 Ark. 538, 268 S.W.3d 897 (2007); *Simons v. Marshall*, 369 Ark. 447, 451, 255 S.W.3d 838, 841 (2007); *Ark Dep't of Human Servs. v. T.B.*, 347 Ark. 593, 67 S.W.3d

17

opinion ignores the breadth of its decision and leaves the state of law on sovereign immunity in complete disarray. The implications of its holding are astounding and call into question other established precedent. *See Lake View Sch. Dist. No. 25 of Phillips Cty. v. Huckabee*, 340 Ark. 481, 10 S.W.3d 892 (2000) (holding that the State, through the executive branch, waived sovereign immunity when it signed off on two published notices to the class members advocating attorneys' fees); *Ark. Dep't of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998) (holding that the General Assembly waived the Department's sovereign immunity as to providing family services in child-welfare proceedings). The following list includes, but is not limited to, the specific types of actions that the majority's decision calls into question when the suit is filed against the State of Arkansas:

- Arkansas Minimum Wage Act
- Arkansas Whistle Blower's Act
- Post-conviction cases
- Land-condemnation cases
- Illegal-exaction cases
- Suits against State owned hospitals
- Freedom of Information Act
- Suits filed against DHS, including dependency-neglect cases

As discussed above, the majority's opinion transforms the State to king-like status and makes "the king can do no wrong" theory absolute. However, even under that theory, the

---

539 (2002); *Short v. Westark Cmty. Coll.*, 347 Ark. 497, 65 S.W.3d 440 (2002); *State v. Goss*, 344 Ark. 523, 42 S.W.3d 440 (2001); *Ark. Pub. Def. Comm'n v. Greene Cty. Cir. Ct.*, 343 Ark. 49, 32 S.W.3d 470 (2000); *Milberg, Weiss, Bershad, Hynes & Lerach, LLP v. State*, 342 Ark. 303, 28 S.W.3d 842 (2000); *Ark. Pub. Def. Comm'n v. Burnett*, 340 Ark. 233, 12 S.W.3d 191 (2000); *Ark. Dep't of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998); *Office of Child Support Enft. v. Mitchell*, 330 Ark. 338, 954 S.W.2d 907 (1997); *Cross v. Ark. Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997).

law has always recognized the sovereign's right to submit to suit. This court, for over twenty years, has recognized that the sovereign may waive its immunity and submit to suit. I would follow our precedent and I would hold that the General Assembly's abrogation of sovereign immunity found in Arkansas Code Annotated section 11-4-218 is constitutional.

HART, J., joins.

*David A. Curran*, Associate General Counsel, University of Arkansas System, for appellant.

*Sanford Law Firm, PLLC*, by: *Josh Sanford*, for appellee.

*Leslie Rutledge*, Attorney General, by: *Lee Rudofsky*, Arkansas Solicitor General; *Nicholas J. Bronni*, Arkansas Deputy Solicitor General; and *Delena C. Hurst*, Assistant Attorney General, counsel for amicus curiae in support of appellant.