Karen R. Baker, Justice, dissenting.
The decision today demonstrates the breadth of this court's holding in Board of Trustees v. Andrews , 2018 Ark. 12, 535 S.W.3d 616, and the aftermath of uncertainty that lies in the wake of that decision as to the status of Arkansas law on the doctrine of sovereign immunity. Prior to Andrews , through Arkansas Department of Finance & Administration v. Staton , 325 Ark. 341, 942 S.W.2d 804 (1996) and Arkansas Department of Finance & Administration v. Tedder , 326 Ark. 495, 932 S.W.2d 755 (1996), this court had established well-defined parameters for the doctrine of sovereign immunity. In fact, in Andrews , the majority recognized that this
court has held that the doctrine of sovereign immunity is rigid but that it may be waived in limited circumstances. This court has recognized that a claim of sovereign immunity may be surmounted in the following three instances: (1) when the State is the moving party seeking specific relief; (2) when an act of the legislature has created a specific waiver of sovereign immunity; and (3) when the state agency is acting illegally or if a state agency officer refuses to do a purely ministerial action required by statute.
2018 Ark. 12, at 5-6, 535 S.W.3d 616 (internal citations omitted). However, in Andrews , by holding that legislative waivers *276 of sovereign immunity are unconstitutional, the court wholly eradicated these established parameters for sovereign immunity. As predicted in my dissent in Andrews and as confirmed through the parties' briefs, the oral arguments, and today's opinion, the status of the law regarding sovereign immunity is in complete disarray.
The majority states "[w]hile one could contend that requiring a specific ruling gives us appellate jurisdiction over interlocutory appeals, if one also accepted the proposition that sovereign immunity deprives the circuit court of subject-matter jurisdiction, remanding cases for sovereign immunity rulings would be illogical." However, it was equally illogical for this court to order supplemental briefing on the issue of sovereign immunity in this case. On January 26, 2018, I dissented from the majority's order that sua sponte ordered supplemental briefing to address the following questions:
1. Can the State raise a sovereign immunity defense on appeal when it was not raised at the trial court level?
2. If the State can raise it now, what is the impact of Andrews , 2018 Ark. 12, 535 S.W.3d 616, and Koonce , 341 Ark. 716, 19 S.W.3d 603 (2000), on this specific case?
The issue of sovereign immunity was not raised before the circuit court below. Therefore, the majority's decision to sua sponte order supplemental briefing on this issue was improvident. However, as a result of the majority's improvidence, the issue is now squarely before this court. Further, despite the majority's decision to sua sponte order supplemental briefing on the above issues, the majority now avoids answering the question altogether by stating that because "the parties did not raise the issue below, it is not proper for us to address it further in this case." The majority's decision to now avoid answering the very issue that the majority ordered to be briefed leads to even more confusion rather than clarity as to the status of the law on sovereign immunity.
Next, I disagree with the majority's decision to treat sovereign immunity like an affirmative defense. Specifically, the majority states that "[a]lthough sovereign immunity certainly has jurisdictional qualities, this court historically has treated it like an affirmative defense that must be preserved. See Ark. Lottery Comm'n v. Alpha Mktg. , 2012 Ark. 23, at 6, 386 S.W.3d 400, 404 (concluding that the trial court's failure to rule on sovereign immunity prevented appellate review)." Following the majority's decision in Andrews , saying that sovereign immunity is like an affirmative defense is akin to saying a Bengal tiger is like a house cat. Further, I disagree because this position yields the nonsensical result that in each lawsuit against the State, trial counsel for a State entity may waive sovereign immunity-either as a result of poor lawyering skills, negligent omission, or even as a matter of trial strategy. This is fundamentally unfair to the citizens of Arkansas and completely absurd. Again, as stated in my dissent in Andrews , the decision to hold that the legislature may no longer waive sovereign immunity necessarily means that the executive and judicial branches likewise may not waive sovereign immunity because any other interpretation would result in treating the legislature differently from the executive and judicial branches. For each branch to operate as envisioned by the constitution, one branch must not be subordinated to either or both of the other branches, and one branch must not take control of one or both of the other branches. City of Lowell v. M & N Mobile Home Park, Inc. , 323 Ark. 332, 916 S.W.2d 95 (1996).
*277 In sum, prior to Andrews , the law on sovereign immunity was clear and could only be surmounted in three distinct circumstances. After Andrews , the status of the law on sovereign immunity was left uncertain. However, after today's opinion-in which the majority sua sponte ordered supplemental briefing on sovereign immunity and then declined to address the issue-the majority has compounded the problem, and the status of the law on sovereign immunity is incomprehensible. Accordingly, I must dissent.
Josephine Linker Hart, Justice, dissenting.
I joined Justice Baker's dissent in Board of Trustees v. Andrews , 2018 Ark. 12, 535 S.W.3d 616 (Baker, J., dissenting). Accordingly, while I should welcome any effort to walk back the unreasonably broad pronouncements in Andrews , I cannot do so in this case. As Justice Wynne noted in the latter half of his concurring opinion, even if the issue had been raised and ruled on by the circuit court-which, as Justice Baker ably notes, it was not-sovereign immunity is not implicated in a tax case where payments are made under protest. I am troubled that the majority saw fit to essentially create this issue, order briefing by the parties only to knock it down like it was a straw man. The majority opinion is a unique example of an advisory opinion; the only legal controversy it resolves is the legal controversy that the majority created. I agree with Justice Baker's assessment that it was improvident to address Andrews in this appeal.
On the merits, I write separately because, in my view, the majority has misconstrued Arkansas Code Annotated section 26-52-322. The full text states:
(a) As used in this section, "withdrawal from stock" means the withdrawal or use of goods, wares, merchandise, or tangible personal property from an established business or from the stock in trade of the established reserves of an established business for consumption or use in the established business or by any other person.
(b)(1) The gross receipts tax levied by this chapter and the compensating use tax levied by the Arkansas Compensating Tax Act of 1949, § 26-53-101 et seq., are levied on a withdrawal from stock.
(2) For purposes of calculating the gross receipts tax or the compensating use tax under subdivision (b)(1) of this section, the gross receipts or gross proceeds for a withdrawal from stock is the value of any goods, wares, merchandise, or tangible personal property withdrawn.
(c) The Director of the Department of Finance and Administration may promulgate rules to implement this section.
Ark. Code Ann. § 26-52-322. The majority is simply wrong when it asserts that "because there is nothing in the language of the statute to indicate whether the 'value' refers to the wholesale value or the resale value, we turn to the rule promulgated by DFA since the General Assembly expressly provides it with the authority to promulgate rules."
In the first place, interpretation of a statute should never be done in a vacuum. In construing any statute, we must place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. State v. Colvin , 2013 Ark. 203, 427 S.W.3d 635. Statutes relating to the same subject must be construed together and in harmony, if possible. Id. Accordingly, because section 26-52-322 deals with goods that avoided sales tax under the purchase-for-resale exemption, "value" necessarily refers to the purchase price of the goods.
*278 Accordingly the wholesale versus retail conundrum that the majority cites is of no moment.
Secondly, assuming, arguendo , that there was some deficiency of substantive law in section 26-52-322, that deficiency may never be validly provided by a regulation. The majority fails to apprehend that DF & A is an executive agency. Under the separation-of-powers clauses in the Arkansas Constitution,[1] this would constitute an unconstitutional delegation of legislative authority. Hobbs v. Jones , 2012 Ark. 293, 412 S.W.3d 844. Simply stated, the legislative branch of the state government has the power and responsibility to proclaim the law through statutory enactments, and the executive branch has the power and responsibility to enforce the laws as enacted by the legislative branch and interpreted by the judicial branch. Id. The functions of the legislature must be exercised by it alone and cannot be delegated. Id.
While I am mindful that section 26-52-322(b)(2)(c) authorizes DF & A to "promulgate rules to implement this section," it is apparent that the majority has simply confounded the authority of two co-equal branches of government. As the Hobbs court stated,
We have held that "[t]he true distinction is between the delegation of power to make the law, which necessarily involves the discretion as to what it shall be, and conferring authority or discretion as to its execution to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made."
Hobbs , 2012 Ark. at 293, 412 S.W.3d at 851 (quoting Terrell v. Loomis , 218 Ark. 296, 300, 235 S.W.2d 961, 963 (1951) ). While the constitutionality of Arkansas Administrative Code 006.05.212-GR-18(D)(1) and (2), is not an issue in this case, because statutes are presumed constitutional, we are obligated to construe a statute in a way that will uphold its constitutionality, if possible. Landers v. Stone , 2016 Ark. 272, 496 S.W.3d 370. Accordingly, we must construe section 26-52-322 in such a way that it does not unconstitutionally delegate its legislative authority to an executive agency.
Thus, because section 26-52-322 does not authorize DF & A to impose a greater value on exempt material simply because the goods were "processed," the circuit court did not clearly err when it found that Flis should not be taxed in accordance with GR-18(D)(2). Under section 26-52-322, the recaptured sales tax can only be on the purchase price of the raw materials. The meals provided to managers are on the same footing as the french fries that are discarded at closing time, the hamburgers that are dropped on the floor, and the soda that spills when a worker is filling a cup. In my view, the provision of a "free" meal to a manager is a sound business practice because it ensures that there will be some quality control of the food that is served during every shift. It is only when the finished food is provided to a customer should it be taxed at the retail price. In oral argument, DF & A conceded that basis for taxation of goods actually sold was appropriate whether it was menu price or deeply discounted.
*279 The majority seems to ignore that in any "processing" there is a certain amount of waste. Some of the wood purchased by a furniture maker becomes sawdust. By the majority's reasoning, that sawdust should be taxed at the same rate as a finished table! Is that not the truly "absurd" result that the majority contends it is attempting to avoid?
I dissent.

§ 1. The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to-wit: Those which are legislative, to one, those which are executive, to another, and those which are judicial, to another.
§ 2. No person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
Ark. Const. art. 4, §§ 1, 2.