Cite as 2018 Ark. 397

# SUPREME COURT OF ARKANSAS

No. CV-18-223

| | |
|---|---|
| ARKANSAS OIL & GAS COMMISSION; LAWRENCE BENGAL, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE ARKANSAS OIL & GAS COMMISSION; W. FRANK MORLEDGE, MIKE DAVIS, LEE DAWKINS, JERRY LANGLEY, JIM PHILLIPS, CHRIS WEISER, TIMOTHY SMITH, CHARLES WOHLFORD, AND THOMAS MCWILLIAMS, IN THEIR OFFICIAL CAPACITIES AS COMMISSIONERS OF THE ARKANSAS OIL & GAS COMMISSION; AND SWN PRODUCTION (ARKANSAS), LLC<br>    APPELLANTS/CROSS-APPELLEES<br><br>V.<br><br>J.R. HURD; SARA SMITH HURD; PATRICIA HURD MCGREGOR; VICTORIA HURD GOEBEL; DAVID W. KILLAM; ADRIAN KATHLEEN KILLAM; TRACY LEIGH KILLAM-DILEO; HURD ENTERPRISES, LTD.; AND KILLAM OIL CO., LTD.<br>    APPELLEES/CROSS-APPELLANTS | Opinion Delivered: December 20, 2018<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-17-3961]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><br><br><br>REVERSED AND REMANDED ON DIRECT APPEAL AND ON CROSS-APPEAL. |

**ROBIN F. WYNNE, Associate Justice**

Appellants Arkansas Oil and Gas Commission (AOGC); Lawrence Bengal, in his official capacity as director of the AOGC; the AOGC commissioners[1] in their official capacities (collectively, the AOGC); and separate appellant SWN Production (Arkansas), LLC (SWN), appeal from an order of the Pulaski County Circuit Court (1) dismissing with prejudice, based on sovereign immunity, this administrative appeal from final orders of the AOGC; (2) declaring the adjudicatory provisions of the Arkansas Administrative Procedure Act (APA) unconstitutional; (3) declaring the AOGC orders at issue void ab initio; and (4) dismissing the petition for review. The petitioners before the circuit court (appellees/cross-appellants, hereinafter referred to as appellees)[2] cross-appealed. We reverse the circuit court's dismissal order in its entirety and remand for further proceedings pursuant to the APA.

## I. *Background*

Appellees are the owners/lessors and lessees of mineral interests in Sections 25 and 36, Township 9 North, Range 11 West, Cleburne County, Arkansas. The mineral interests at issue, which lie in the Moorefield Shale Formation (below the Fayetteville Shale Formation), are integrated into SWN's drilling units by virtue of integration orders issued by the AOGC in March 2017. SWN subsequently filed supplemental applications with

---

[1]The AOGC Commissioners are W. Frank Morledge, Mike Davis, Lee Dawkins, Jerry Langley, Jim Phillips, Chris Weiser, Timothy Smith, Charles Wohlford, and Thomas McWilliams.

[2]The petitioners are J.R. Hurd, Sara Smith Hurd, Patricia Hurd McGregor, Victoria Hurd Goebel, David W. Killam, Adrian Kathleen Killam, Tracy Leigh Killam-Dileo, Hurd Enterprises, Ltd., and Killam Oil Co., Ltd.

the AOGC seeking a determination of "the reasonable royalty rate consistent with royalty negotiated for depth-limited leases below the base of the Fayetteville Shale formation, made at arm's length in the [same] general area." In essence, SWN argued that the oil and gas leases between the mineral owners and Hurd Enterprises and Killam Oil were "self-dealing, non-arm's length" transactions and that the 25 percent royalty rate was "grossly excessive." Appellees objected to the supplemental application and contended, among other things, that the AOGC did not have the authority to disregard the royalty rate in an existing lease when the lessee elects to go non-consent. After a public hearing, the AOGC ordered that "[t]he leasehold royalty payable to the parties . . . by the Consenting Parties during the recoupment period shall not exceed 1/7th." Thus, the AOGC reduced the royalty rate agreed to by Hurd Enterprises and Killam Oil and the mineral owners.

On July 28, 2017, appellees filed a petition for review in the Pulaski County Circuit Court pursuant to the APA, Arkansas Code Annotated section 25-15-212 (Repl. 2014), and the Arkansas Oil and Gas Conservation Act, Arkansas Code Annotated section 15-72-110 (Repl. 2009). They alleged that the AOGC lacks statutory authority to (1) disregard the royalty rate in an existing lease when a lessee is forcibly integrated into a drilling unit and then elects to go non-consent; (2) single out in its orders "leases negotiated at non-arms-length between affiliated parties"; or, (3) by virtue of the language of the supplemental orders, authorize SWN as the operator to make the practical determination of which leases in the unit were "negotiated at non-arms-length between affiliated parties." Among other claims, appellees alleged that the AOGC's actions were ultra vires. Pursuant to Arkansas

3

Code Annotated section 25-15-212(g), appellees requested that the circuit court set a briefing schedule and hear oral argument; ultimately, appellees sought to have the supplemental orders regarding royalty rates vacated and reversed.

On January 18, 2018, this court issued a decision concerning the doctrine of sovereign immunity in *Board of Trustees of the University of Arkansas v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616. On January 21, 2018, the AOGC filed a motion to dismiss the petition for review for lack of subject-matter jurisdiction. The AOGC argued that, under *Andrews*, it has sovereign immunity from suit in this matter and that the action should be dismissed. Appellees filed a response the following day, on which a hearing was scheduled, arguing that the complaint stated a valid claim for an ultra vires and illegal act that was not subject to the sovereign immunity doctrine. At the hearing, the circuit court considered the parties' arguments regarding sovereign immunity as set out in the motion to dismiss and response, allowed the parties to make any further arguments for the record, and announced its decision to grant the AOGC's motion to dismiss and declare the orders that were the subject of the petition for review void ab initio and of no force and effect. In its February 12, 2018 order, the circuit court wrote:

> On January 22, 2018, came on for hearing the motion to dismiss of separate Respondents, the Arkansas Oil & Gas Commission, Lawrence Bengal, W. Frank Morledge, Mike Davis, Lee Dawkins, Jerry Langley, Jim Phillips, Chris Weiser, Timothy Smith, Charles Wohlford and Thomas McWilliams ("Agency Respondents") and the response of the petitioners, J.R. Hurd, Sara Smith Hurd, Patricia Hurd McGregor, Victoria Hurd Goebel, David W. Killam, Adrian Kathleen Killam, Tracy Leigh Killam-Dileo, Hurd Enterprises, Ltd., and Killam Oil Co., Ltd.

("Petitioners"), and from the pleadings and the arguments of the parties, the Court hereby finds and concludes as follows:

1. On January 22, 2018, the Agency Respondents filed a Motion to Dismiss based upon the recent decision of the Arkansas Supreme Court in the case of *Board of Trustees of the University of Arkansas v. Andrews*, Supreme Court Case Number CV-17-168 issued on January 18, 2018. Petitioners responded to the motion the same day.

2. The *Andrews* case did not specifically address the interaction of Article 2, Section 13 of the Arkansas Constitution about whether the State had waived sovereign immunity, or to what extent sovereign immunity and Article 2, Section 13 might work together.

3. In this administrative appeal the Court has seen nothing that the State has done that would constitute a fact-based waiver of sovereign immunity. As soon as reasonably possible after the Supreme Court announced a sea change in the parameters of sovereign immunity, the Agency Respondents brought the issue of sovereign immunity to the Court's attention and addressed it in a motion to dismiss. In the event that was something left open in the *Andrews* case, it is not open in this case.

4. Both Article 2, Section 13 of the Arkansas Constitution and the due process clause of the United States Constitution require both a procedural and a substantive remedy for every alleged injury, wrong, or taking.

5. This matter is not an original action. It is an administrative appeal under the adjudicatory provisions of the Arkansas Administrative Procedures Act. The adjudicatory provisions are not the entire act. The specific statutes are Ark. Code Ann. §§ 25-15-206, 207, 208, 209, 210, 212, 213, and 214. Those statutes together create a specific, seamless adjudicatory framework that has always satisfied the procedural and substantive requirements of due process because there was an administrative provision, and then there was an opportunity to appeal. By statute, the appeal of an agency decision was to circuit court for any party who felt aggrieved by an agency's administrative action. The General Assembly, in the Administrative Procedures Act, specifically legislated in A.C.A. § 25-15-2 14 that any appeal of an agency decision must go to circuit court.

5

6. The Court is not aware of any statutory authority allowing any administrative appeals to be heard by the Arkansas State Claims Commission. Ark. Code Ann. § 19-10-204(b)(2)(A) does give the Claims Commission jurisdiction over claims which are barred by the doctrine of sovereign immunity from being litigated in a court of general jurisdiction. But as previously noted, the present matter is not an original claim; it is an administrative appeal that is part of a seamless process set up by the General Assembly.

7. To the extent that the Arkansas Supreme Court's decision in *Andrews* is applicable to administrative appeals under the Arkansas Administrative Procedures Act, the adjudicatory provisions of the Arkansas Administrative Procedures Act are now violative of Article 2, Section 13 of the Arkansas Constitution and violative of the due process clause of the United States Constitution until such time as the General Assembly can meet and amend the APA to be in conformity with both the *Andrews* case, Article 2, Section 13, and the due process clause.

8. The Defendants' Motion to Dismiss is granted with prejudice, and this case is dismissed. Ark. Code Ann. §§ 25-15-206, 207, 208, 209, 210, 212, 213, and 214 that are the adjudicatory provisions of the Arkansas Administrative Procedures Act are declared to be unconstitutional as written under the *Andrews* case because of the Arkansas Supreme Court's decision in *Andrews.* This means that the orders that are the subject of the petition for review are void *ab initio.* They are null and void as if they had never been entered.

9. Petitioners' petition for review also alleged jurisdiction under Ark. Code Ann. § 15-72-110. Petitioners have also argued that the *Andrews* case noted that "acting illegally" is an exception to sovereign immunity and that the whole issue on appeal is that the Agency Respondents were without statutory authority to rule as they did, making the orders appealed from *ultra vires.* They further argue that the Arkansas Supreme Court in *Andrews* did not overrule that exception. To that extent, the Court grants the Agency Respondents' Motion to Dismiss that they were not acting illegally, that they were not acting *ultra vires*, based upon the pleadings that the Court read. The Court makes a fact-based determination that there is no indication in the appeal record that the Agency Respondents were acting *ultra vires*, illegally, or without authority of law. The Court declines each of the Petitioners' individual arguments to the extent that the Court hasn't granted any of them. *Dobson v. Oil and Gas Commission* case, 218 Ark. 160, 235 S.W.2d 33 (1950), cited by the Petitioners, has been overruled by implication with the *Andrews* case.

6

10. Petitioners also argued in their petition for review and in their response to Respondents' motion to dismiss that their property rights are affected by the orders that are the subject of the petition for review. Petitioners cite Article 2, Section 13, as a further ground for their petition for review and as an exception to the Court's reading of the holding in *Andrews.* The Court agrees that property rights are involved. However, without the Supreme Court specifically addressing the interplay of sovereign immunity and Article 2, Section 13, as a trial judge, the Court concludes based on its reading of *Andrews* that if the sovereign immunity clause of the constitution and Article 2, Section 13 are read together, the Article 2, Section 13 applies to everything and everybody unless the matter is a party against the State of Arkansas and then the sovereign immunity clause means the State of Arkansas cannot be brought into court.

11. Based on *Andrews* and the lack of a right of review of Respondents' orders, the Court concludes that there is a clear violation of both procedural and substantive due process.

12. The Court is not making a decision about the factual elements of the parties' arguments, other than the Agency Respondents' actions were not *ultra vires.* If the case is remanded and the Court has jurisdiction, the Court will allow the parties to make further arguments on other issues raised.

13. This leaves the parties to those contracts at issue in the order back talking to each other and puts the Arkansas Oil and Gas Commission out of adjudicatory business until something is resolved by the Arkansas Supreme Court, or the General Assembly addresses the issue.

14. The Court's oral ruling and the bases therefor are incorporated herein.

15. SWN Production (Arkansas), LLC is made a party respondent herein.

IT IS THEREFORE ORDERED that the Agency Respondents' motion to dismiss is granted with prejudice, that the orders that are the subject of the petition for review of J.R. Hurd, Sara Smith Hurd, Patricia Hurd McGregor, Victoria Hurd Goebel, David W. Killam, Adrian Kathleen Killam, Tracy Leigh Killam-Dileo, Hurd Enterprises, Ltd., and Killam Oil Co., Ltd., are void ab initio and of no force and effect, and that Petitioners' petition for review is dismissed.

7

From this order, the AOGC and SWN filed notices of appeal, and appellees filed a notice of cross-appeal.

## II. *Direct Appeal*

On appeal, the AOGC argues that the circuit court correctly held that the petition for review was barred by sovereign immunity but erred by invalidating the APA's adjudicatory provisions and AOGC's orders. The AOGC contends that after holding that the petition was barred by sovereign immunity, the circuit court lacked jurisdiction to do anything but dismiss the petition. Further, the AOGC argues that even if the circuit court's sovereign-immunity analysis was incorrect, the court's award of substantive relief must still be reversed because the circuit court's basis for declaring provisions of the APA unconstitutional and voiding AOGC's administrative orders would no longer exist. In its brief, separate appellant SWN argues that judicial review of state administrative actions is not barred by the *Andrews* decision for several reasons, and that even if the circuit court's sovereign-immunity ruling is affirmed, the substantive rulings of the circuit court must be reversed. Appellees respond by arguing that judicial review of an agency action under the APA is not unconstitutional; judicial review of an agency action alleged to be ultra vires is not unconstitutional; and the AOGC exceeded its authority, i.e., acted in an ultra vires manner. Accordingly, all parties agree that the circuit court's order should be reversed insofar as it declared the adjudicatory portions of the APA unconstitutional.

8

We begin our analysis with article 5, section 20 of the Arkansas Constitution, which provides: "The State of Arkansas shall never be made defendant in any of her courts." Sovereign immunity is jurisdictional immunity from suit, and jurisdiction must be determined entirely from the pleadings. *Bd. of Trustees of Univ. of Ark. v. Andrews*, 2018 Ark. 12, at 5, 535 S.W.3d 616, 619. A suit against the State is barred by the sovereign-immunity doctrine if a judgment for the plaintiff will operate to control the action of the State or subject it to liability. *Id.*

In *Andrews*, this court held that that the General Assembly cannot waive the State's immunity pursuant to article 5, section 20. The plaintiff had filed a claim against the college for failing to compensate him for overtime in violation of the Arkansas Minimum Wage Act. This court examined the history of sovereign immunity in the Arkansas Constitution and our precedent, and we concluded that the General Assembly cannot waive the State's immunity pursuant to article 5, section 20. *Id.* at 11–12, 535 S.W.3d at 623. This court recognized that some cases had previously stated that a claim of sovereign immunity may be surmounted "when an act of the legislature has created a specific waiver of sovereign immunity," and overruled any cases conflicting with the holding in *Andrews*. *Id.* Since *Andrews*, this court has cautioned that the opinion should not be read too broadly. *Ark. Cmty. Corr. v. Barnes*, 2018 Ark. 122, at 3, 542 S.W.3d 841, 843 ("We emphasize here, as in *Andrews*, that the only issue before this court is whether the General Assembly's choice to abrogate sovereign immunity in the AWBA is prohibited by the

constitution."); *Ark. Dep't of Veterans Affairs v. Mallett*, 2018 Ark. 217, at 2 n.2, 549 S.W.3d 351, 352 n.2 ("We caution that *Andrews* should not be interpreted too broadly.").

Now, the question before this court is whether article 5, section 20 of the Arkansas Constitution prohibits suit against the AOGC in the context of an appeal to circuit court under the APA, i.e., whether sovereign immunity prohibits suits seeking judicial review of agency adjudications. Relying on *Andrews*, the circuit court concluded that it does. We generally review a circuit court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and by viewing them in the light most favorable to the plaintiff. *Andrews*, 2018 Ark. 12, at 4, 535 S.W.3d at 619. When the circuit court is presented with documents outside the pleadings, we treat the case as an appeal from a summary judgment and view the evidence in the light most favorable to the party opposing the motion. *Id.* However, when the issues on appeal do not involve factual questions but rather the application of a legal doctrine, we simply determine whether the moving party is entitled to judgment as a matter of law. *Id.*

Pursuant to the APA, "[i]n cases of adjudication, any person . . . who considers himself or herself injured in his or her person, business, or property by final agency action shall be entitled to judicial review of the action under this subchapter." Ark. Code Ann. § 25-15-212(a). "'Adjudication' means an agency process for the formulation of an order." Ark. Code Ann. § 25-15-202(1)(A). Section 25-15-212 further provides in pertinent part as follows:

(g) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency not shown in the record, testimony may be taken before the court. The court shall, upon request, hear oral argument and receive written briefs.

(h) The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the agency's statutory authority;
(3) Made upon unlawful procedure;
(4) Affected by other error or law;
(5) Not supported by substantial evidence of record; or
(6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. § 25-15-212(g), (h). Appellees also cited in their petition for review Arkansas Code Annotated section 15-72-110 regarding appellate procedures for proceedings brought under the Arkansas Oil and Gas Conservation Act. Section 15-72-110, titled "Appellate procedures," provides in pertinent part:

In all proceedings brought under authority of this act, of any oil or gas conservation statute of this state, or of any rule, regulation, or order issued thereunder and in all proceedings instituted for the purpose of contesting the validity of any provision of the act, of any oil or gas conservation statute, or of any rule, regulation, or order issued thereunder, appeals may be taken in accordance with the general laws of the State of Arkansas relating to appeals.

The present case is distinguishable from *Andrews* and other recent cases concerning sovereign immunity because it concerns an appeal of an agency adjudication. The AOGC is a named defendant, but its role in the proceeding is that of a tribunal or a quasi-judicial decision-maker rather than a real party in interest. It is akin to a trial court in an appellate

11

proceeding; it has no vested interest in the outcome of the appeal other than whether its decision is upheld. The subject of the adjudication—the amount of royalty to be paid by SWN to the appellees—does not affect the State's coffers or control its actions. *See Duit Constr. Co., Inc. v. Ark. State Claims Comm'n*, 2015 Ark. 462, at 5, 476 S.W.3d 791, 795 ("In determining whether the doctrine of sovereign immunity applies, the court must decide if a judgment for the plaintiff will operate to control the action of the State or subject it to liability."). Appellees sought judicial review of the AOGC's final agency action; they alleged no additional claims against the AOGC or any other state actor. Under these circumstances, sovereign immunity is not implicated because the AOGC is not "made a defendant" as contemplated by article 5, section 20, of the Arkansas Constitution. There is no need to address "exceptions" to sovereign immunity because the doctrine simply does not apply in this case. We acknowledge the AOGC's argument that the circuit court reviewed the administrative record and made a "fact-based determination" that the AOGC was not acting ultra vires, illegally, or without authority of law. However, we find the circuit court's order to be ambiguous such that remand is necessary to ensure that appellees' arguments—which are based in statutory interpretation—are considered.

Because the circuit court erred in concluding that the doctrine of sovereign immunity barred its consideration of the petition for review of the AOGC orders, it follows that the rulings declaring the adjudicatory provision of the APA unconstitutional and the AOGC's orders void ab initio must also be reversed. Accordingly, we reverse the

12

circuit court's order in its entirety and remand for further proceedings pursuant to the APA.[3]

### III. *Cross-Appeal*

On cross-appeal, appellees/cross-appellants argue that the AOGC exceeded its authority. Essentially, their argument is that none of the statutes cited by the AOGC actually provide a sufficient basis for the AOGC's asserted jurisdiction over the royalty SWN must pay the royalty owners. Alternatively, they argue that this court should remand for full consideration of whether the AOGC exceeded its authority. We agree with the alternative argument, and for the reasons outlined above, remand to the circuit court for consideration of the petition for review in accordance with the APA.

### IV. *Conclusion*

Reversed and remanded on direct appeal and on cross-appeal.

HART, J., concurs.

WOOD and WOMACK, JJ., concur in part and dissent in part.

BAKER, J., dissents.

---

[3]Because this appeal comes to us on the grant of a motion to dismiss based on the doctrine of sovereign immunity and the circuit court has not considered the petition for review on its merits, we believe it prudent to remand for consideration by the circuit court in the first instance as contemplated by the APA.

JOSEPHINE LINKER HART, Justice, concurring. I concur. I agree with the majority's conclusion that the role of the Arkansas Oil and Gas Commission in this case was that of a quasi-judicial forum; the commission was not "made defendant" within the meaning of art. 5, § 20 of the Arkansas Constitution. I write separately because Justice Baker's dissent raises issues that demand action from this court. The untenability of our current sovereign immunity jurisprudence, demonstrated by cases like the one currently before us, is lost neither on the parties to this case nor on the rest of the Arkansas legal community. The fallout from *Board of Trustees of the University of Arkansas v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616 has manifested in all forms of state court litigation related to government affairs, with litigants from both the public and private spheres clamoring to either weaponize or escape from *Andrews* and its undefined limitations, and our law is suffering because of it. This court must "wipe the slate" on sovereign immunity, in lieu of continuing this tired and awkward endeavor to develop our jurisprudence within *Andrews* and its progeny. *See, e.g., Walther v. FLIS Enters., Inc.*, 2018 Ark. 12, 535 S.E.3d 616 (sovereign immunity is an affirmative defense that must be raised in a responsive pleading) and *Arkansas Dep't of Veterans Affairs v. Mallett*, 2018 Ark. 217, 549 S.W.3d 351 (without overruling *FLIS*, failure to raise sovereign immunity as affirmative defense in responsive pleading simply does not matter).

We cannot keep doing this. The *Andrews* decision was improvident for its profound lack of any actual constitutional analysis. *See Arkansas Community Correction v. Barnes*, 2018 Ark. 122, 542 S.W.3d 841 (Hart, J., dissenting). The notion that the drafters of our

constitution intended to allow our state government to assert sovereign immunity against the citizens of Arkansas in cases like *Andrews* and *Barnes*, where the government is accused of acting illegally and unconstitutionally, is simply wrong. Furthermore, the failure by the majority in *Andrews* to define the majority opinion's limitations, especially when the dissent so desperately endeavored to point out the majority opinion's dangerous implications, has made this situation far worse. It is time for this court to simply acknowledge as much, so we can move forward.

RHONDA K. WOOD, **Justice, concurring and dissenting**. I concur with the result on direct appeal. Sovereign immunity is not applicable in a petition for review from an agency decision. For the following reasons, however, I must respectfully dissent from the majority's decision to remand the cross-appeal.

The cross-appeal concerns an issue of statutory interpretation that was fully briefed to the circuit court and on appeal. The circuit court ruled on the issue, albeit without explanation. And on appeal, the parties unanimously entreat this court to rule on the merits without remanding.[1] Procedurally, remanding the cross-appeal here accomplishes no more than eliciting a more detailed legal interpretation that we will ultimately afford no deference. *E.g.*, *Dep't of Ark. State Police v. Keech Law Firm, P.A.*, 2017 Ark. 143, at 2, 516 S.W.3d 265, 267; *State v. Thomas*, 2014 Ark. 362, at 4, 439 S.W.3d 690, 692 (explaining that we give no deference to the circuit court's statutory interpretation). In practicality,

---

[1]As noted by the majority, appellees alternatively argue that should the court fail to address the merits, they would prefer remand over an outright ruling against them.

however, the majority's decision unnecessarily delays resolution, which undoubtedly induces continued financial strain on every party involved. Because we are more than capable of interpreting the law at this stage in the case, I respectfully dissent from the majority's decision not to do so.

The majority opinion implies that the circuit court only made a factual determination, not a legal one. But the opposite is true. Although the circuit court factually reviewed the administrative record, as the majority cites, it did not *decide* any facts. The order expressly stated that it "is not making a decision about the factual elements of the parties' arguments, other than the Agency Respondents' actions were not ultra vires." But the ultra-vires issue is purely a matter of statutory interpretation. There are simply no factual issues at play.

The circuit court plainly and repeatedly stated it was denying the appellees' legal argument in their petition for review. The court concluded, both on the record and in its order, that the AOGC did not act "ultra vires, illegally, or without authority of law." The parties agree that there are no material facts in dispute. They also agree that the appellees' petition for review sought only a legal determination regarding the scope of the AOGC's statutory authority. After appellees specifically requested that the circuit court rule on the ultra-vires issue, the court stated in its written order,

> Petitioners have also argued that the Andrews case noted that "acting illegally" is an exception to sovereign immunity and that *the whole issue on appeal is that the Agency Respondents were without statutory authority to rule as they did, making the orders appealed from ultra vires*. . . . To that extent, the Court grants the

16

Agency Respondents' Motion to Dismiss that *they were not acting illegally, that they were not acting ultra vires*, based upon the pleadings that the court read. (Emphasis added.) Finally, the circuit court's order "declines each of the Petitioners' individual arguments to the extent the Court hasn't granted any of them." This resulted in a final order. By granting the State's motion to dismiss as to the merits of the petitioners' underlying claim, the circuit court issued a final ruling on the matter of law that was the only issue in the matter.

Despite all of this, the majority finds "the circuit court's order to be ambiguous such that a remand is necessary to ensure that appellees' arguments—which are based on statutory interpretation—are considered." Yet, it is unclear what will be accomplished on remand. The issue was briefed below, the circuit court is not required to hold a hearing, and the court is not required to make specific findings on a matter of statutory interpretation. In fact, the circuit court could conceivably enter a one-sentence order on remand, simply stating again that the AOGC did not act "ultra vires, illegally, or without authority of law."

The issue on cross-appeal is purely a matter of statutory interpretation, which is ultimately for this court to decide. *See Brock v. Townsell*, 2009 Ark. 224, at 9, 309 S.W.3d 179, 185. While remand may afford the circuit court an opportunity to clarify any ambiguities in its order and consider its interpretation further, such clarification and interpretation becomes immediately inconsequential in the subsequent appeal. *Id.*

(explaining that we review issues of statutory construction de novo and are not bound by the circuit court's legal interpretation).

For the sake of judicial economy, I dissent.

WOMACK, J., joins in this opinion.

**KAREN R. BAKER, Justice, dissenting**. Because I cannot agree that the circuit court erred in its application of the precedent established in *Board of Trustees of Univ. of Arkansas v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616, I dissent from the majority opinion. Although the majority distinguishes this appeal from *Andrews* and holds that sovereign immunity does not apply, this analysis contradicts *Andrews*. Here, the majority explains:

> The present case is distinguishable from *Andrews* and other recent cases concerning sovereign immunity because it concerns an appeal of an agency adjudication. The AOGC is a named defendant, but its role in the proceeding is that of a tribunal or a quasi-judicial decision-maker rather than a real party in interest. It is akin to a trial court in an appellate proceeding; it has no vested interest in the outcome of the appeal other than whether its decision is upheld. The subject of the adjudication–the amount of royalty to be paid by SWN to the appellees–does not affect the State's coffers or control its actions. *See Duit Constr. Co., Inc. v. Ark. State Claims Comm'n*, 2015 Ark. 462, at 5, 476 S.W.3d 791, 795 ("In determining whether the doctrine of sovereign immunity applies, the court must decide if a judgment for the plaintiff will operate to control the action of the State or subject it to liability."). Appellees sought judicial review of the AOGC's final agency action; they alleged no additional claims against the AOGC or any other state actor. Under these circumstances, sovereign immunity is not implicated because the AOGC is not "made a defendant" as contemplated by article 5, section 20, of the Arkansas Constitution. There is no need to address "exceptions" to sovereign immunity because the doctrine simply does not apply in this case.

This analysis contradicts *Andrews* for several reasons. First, in *Andrews* the court held,

18

> [W]e interpret the constitutional provision, "The State of Arkansas shall never be made a defendant in any of her courts," precisely as it reads. The drafters of our current constitution removed language from the 1868 constitution that provided the General Assembly with statutory authority to waive sovereign immunity and instead used the word "never." *See* Ark. Const. of 1868, art. 5, § 45; Ark. Const. art. 5, § 20. The people of the state of Arkansas approved this change when ratifying the current constitution.

*Andrews*, 2018 Ark. 12, at 10–11, 535 S.W.3d at 622.

Stated differently, in *Andrews*, the court held that "never means never," therefore this suit is barred based on the broad language in *Andrews*.

Second, despite the majority holding that the sovereign immunity "doctrine simply does not apply in this case"—this is also inapposite of *Andrews* because *Andrews* did not identify exceptions, exemptions or the like. Again, the State may never be sued.

Third, the majority's position that sovereign immunity does not apply because the suit "does not affect the State's coffers or control its actions," is misplaced as well. As I explained in my dissent in *Andrews*, "Absent from our constitution is any language limiting sovereign immunity to money judgments." *Andrews*, 2018 Ark. 12, at 14, 535 S.W.3d at 624 (Baker, J., dissenting). Therefore, this does not support the majority's position that sovereign immunity "simply does not apply in this case."

Finally, the majority's opinion is inconsistent with *Andrews* because actions by the State are at issue in this case. Although the majority explains that—"the AOGC is a named defendant, but its role in the proceeding is that of a tribunal or a quasi-judicial decision-maker rather than a real party in interest"—and that "it has no vested interest in the outcome of the appeal other than whether its decision is upheld," this is not the standard

19

under *Andrews*. *Andrews* held that the State may never be made a defendant in any of her own courts. Accordingly, despite the majority's attempt to narrow *Andrews*, the broad language of *Andrews* includes the actions alleged in this case. Here, Hurd alleges that the AOGC's actions were beyond the AOGC's authority as a State board and acted in an ultra vires manner. Therefore, State conduct is at issue, and *Andrews* bars suit.

Accordingly, I dissent.

*Leslie Rutledge*, Att'y Gen., by: *Lee Rudofsky*, Solicitor Gen.; *Jennifer L. Merritt*, Sr. Ass't Att'y Gen.; *Monty V. Baugh*, Ass't Att'y Gen.; and *Kesia Morrison*, Ass't Att'y Gen., for State appellant/cross-appellee.

*PPGMR Law, PLLC*, by: G. *Alan Perkins* and *Kimberly D. Logue*, for SWN Production (Arkansas), LLC, appellant/cross-appellee.

*Friday, Eldredge & Clark, LLP*, by: *William A. Waddell, Jr.*, *Robert S. Shafer*, and *Joshua C. Ashley*; and *Morgan Law Firm, P.A.*, by: M. *Edward Morgan*, for appellees/cross-appellants.