Cite as 2020 Ark. 213

# SUPREME COURT OF ARKANSAS

No. CV-19-739

|  |  |
|---|---|
| ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION; ARKANSAS ALCOHOLIC BEVERAGE CONTROL DIVISION; AND ARKANSAS MEDICAL MARIJUANA COMMISSION<br><br>APPELLANTS<br><br>V.<br><br>CARPENTER FARMS MEDICAL GROUP, LLC<br><br>APPELLEE | Opinion Delivered: May 28, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[NO. 60CV-18-8555]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND DISMISSED IN PART; REMANDED. |

**RHONDA K. WOOD, Associate Justice**

The Arkansas Medical Marijuana Commission disqualified Carpenter Farms Medical Group, LLC's application for a marijuana-cultivation facility. Carpenter Farms sued and asserted it was the only 100 percent minority-owned applicant and that the Commission violated equal protection by singling out its application for disparate treatment. Carpenter Farms also alleged that the Commission violated the Administrative Procedure Act by failing to adopt certain rules and improperly applying the rules it did adopt. The State moved to dismiss based on sovereign immunity, but the circuit court denied the motion. The State filed this interlocutory appeal.

We affirm in part; reverse and dismiss in part; and remand. Carpenter Farms can proceed with its claim that the Commission failed to adopt model rules. It can also proceed with its declaratory-judgment action alleging an equal-protection violation. But the lawsuit cannot go forward regarding the Commission's application of its own rules or as an administrative appeal.

Part I. *Procedural Background and Relevant Facts*

A. Factual Allegations

The people of Arkansas legalized medical marijuana by constitutional amendment. Ark. Const. amend. 98. Amendment 98 established the Arkansas Medical Marijuana Commission "to determine the qualifications for receiving . . . a license to operate a cultivation facility." *Id.* § 19(a)(1). The Commission consists of five members. *Id.* § 19(a)(3). Amendment 98 instructed the Commission to adopt certain rules to "carry out the purposes of this amendment" and to "perform its duties"; such rules were to be "rules as defined in the Arkansas Administrative Procedure Act [APA]." *Id.* § 8(b)(1), (2). The Commission accordingly adopted governing rules and regulations. *See* Ark. Admin. Rule 006.28.17-001 (MMC Rules).

Carpenter Farms sued the Commission, the Arkansas Department of Finance and Administration (DFA), and the Arkansas Alcoholic Beverage Control Division (ABC) (collectively, the "State"). The facts as alleged in the complaint are as follows. Carpenter Farms applied for a medical-marijuana cultivation license. Carpenter Farms contended it was the only 100 percent minority-owned applicant. After Carpenter Farms submitted its

2

application, ABC staff concluded that Carpenter Farms' application was "complete and . . . contain[ed] requisite supporting documentation."

A second, substantive review then took place. The Commission sent Carpenter Farms an email stating that "[t]he application you submitted has now been verified." ABC staff sent Carpenter Farms a follow-up email stating that "[o]ur office now considers your application complete and it will go before the Commission for scoring." Four of the five commissioners later returned their scores for all the cultivation-facility applications, including Carpenter Farms'.

But before the Commission released scores for all cultivation-licensing applications, ABC staff member Mary Robin Casteel again reviewed Carpenter Farms' application. (At this point, Carpenter Farms alleged it was ranked fifth or higher by the four commissioners who had submitted their scores, with the five highest-scored applicants receiving licenses.) Upon this review, Casteel unilaterally disqualified Carpenter Farms and removed it from the list of scored applicants. The stated reason for the disqualification was a discrepancy in Carpenter Farms' ownership structure, which purportedly violated Amendment 98's ownership requirements. (Carpenter Farms maintained that this discrepancy was a scrivener's error.)

Casteel communicated her decision to disqualify Carpenter Farms to Travis Story, the sole commission member whose scores remained outstanding. She also specifically identified Carpenter Farms as the applicant, thus breaking "confidentiality on the blind scoring." Carpenter Farms alleged that Story scored its application last and gave it "the

exact score needed to ensure [Carpenter Farms'] aggregate score put it in sixth place instead of fifth place."

After all the commissioners returned their scores, the Commission released the raw scores publicly and awarded five tentative cultivation-facility licenses. Carpenter Farms was not among the scored applications––its first notice that its application was disqualified. Carpenter Farms alleged it was the only applicant with a verified application that did not receive a public score. It also alleged that its was the only application that was disqualified *after* being scored. Carpenter Farms also maintained that its disqualification occurred without the Commission being notified. Counsel for DFA initially agreed to present Carpenter Farms' motion for reinstatement to the Commission. But the Commission later obtained its own counsel and, upon her advice, denied Carpenter Farms an opportunity to be heard at two Commission meetings.

The Commission ratified Carpenter Farms' disqualification at its July 2018 meeting. Carpenter Farms then submitted a motion for reconsideration and a request for a hearing. The Commission denied the motion and issued a formal letter to Carpenter Farms disqualifying its application for a license.

B. Legal Allegations

Carpenter Farms' complaint rests mainly on two legal theories: (1) the Commission violated the APA and MMC Rules and (2) the Commission violated equal protection by subjecting Carpenter Farms' application to disparate treatment.

4

Under its APA legal theory, Carpenter Farms maintained that the Commission failed to adopt model rules as required by Arkansas Code Annotated section 25-15-215. Had the Commission adopted the model rules, Carpenter Farms argues, it would have had an opportunity for notice and a hearing following the disqualification. Carpenter Farms also asserted that the Commission violated MMC Rules when it refused to score Carpenter Farms' verified application.

Under its disparate-treatment theory, Carpenter Farms alleged that the Commission and Casteel permitted scoring of other applicants and issued licenses despite their applications containing similar errors that should have barred their scores under Amendment 98 or MMC Rules. For example, it maintains that some applicants failed to submit adequate documentation proving residency; had outstanding tax liabilities in violation of Commission rules; and would have placed a facility impermissibly close to a church. Carpenter Farms also maintained that Casteel's heightened review of its application was "arbitrary, capricious, biased and lawless," violated the MMC Rules, and violated the U.S. and Arkansas Constitutions' due-process and equal-protection clauses.

Carpenter Farms requested that the circuit court reinstate its application; allow its score to stand; declare that its disqualification was ultra vires, arbitrary, capricious, and contrary to law; declare that the Commission's failure to adopt model rules was improper; and reject Story's score and recalculate Carpenter Farms' score "to be five times the average of the other four scores." If the court denied its request to reinstate its score, Carpenter Farms asked the court to vacate the disqualification; order a hearing under Arkansas Code

Annotated sections 25-15-207 and 25-15-212(B) (Repl. 2014 & Supp. 2019); and disqualify Casteel and Story from further participation. It also asked for an injunction prohibiting the granting of additional cultivation licenses.

The State moved to dismiss based on sovereign immunity. It argued that Carpenter Farms' complaint impermissibly sought to control the lawful action of the State. It also argued that appeals under the APA are limited to agency "adjudications" and no adjudication had taken place.

The circuit court held a hearing and denied the motion by written order. The court found that Carpenter Farms' complaint contained detailed allegations that the Commission violated equal protection. The court reasoned that the complaint sufficiently alleged the "illegal-act" or "ultra vires" exception to sovereign immunity. The State appeals this order. The State also alleges that the circuit court displayed injudicious conduct at the hearing and should be barred from considering any case involving the Attorney General.

C. Standard of Review and Sovereign Immunity

In reviewing a circuit court's decision on a motion to dismiss, "we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *McGhee v. Ark. State Bd. of Collection Agencies*, 360 Ark. 363, 368, 201 S.W.3d 375, 377 (2005). We focus "only to the allegations in the complaint and not to matters outside the complaint." *Id.*, 201 S.W.3d at 378. We will resolve all reasonable inferences in the complaint's favor and construe the pleadings liberally. *Monsanto Co. v. Ark. State Plant Bd.*, 2019 Ark. 194, at 8, 576 S.W.3d 8, 13. The State here asserts that sovereign immunity bars

6

Carpenter Farms' complaint. We review this issue de novo. *Ark. Cmty. Corr. v. Barnes*, 2018 Ark. 122, at 2, 542 S.W.3d 841, 842.

The State's sovereign immunity originates in Article 5, section 20 of the Arkansas Constitution, which provides "[t]he State of Arkansas shall never be made defendant in any of her courts." The sovereign-immunity doctrine bars suit "if a judgment for the plaintiff will operate to control the action of the State or subject it to liability." *Bd. of Trustees of Univ. of Ark. v. Andrews*, 2018 Ark. 12, at 5, 535 S.W.3d 616, 619. In *Andrews*, we held that the General Assembly's waiver of sovereign immunity in cases involving the minimum-wage act were "repugnant" to the Arkansas Constitution's mandate that the State not be made a defendant in any court. *Id.* at 10, 535 S.W.3d at 622.

But when a party appeals from an agency adjudication, the sovereign-immunity doctrine does not apply. *Ark. Oil & Gas Comm'n v. Hurd*, 2018 Ark. 397, at 11, 564 S.W.3d 248, 255. In these appeals, the State's role is that of a "quasi-judicial decision-maker rather than a real party in interest." *Id.* at 10, 564 S.W.3d at 255. Further, in *Martin v. Haas*, a post-*Andrews* case, we reiterated that "our sovereign immunity cases allow actions that are illegal, unconstitutional or ultra vires to be enjoined." 2018 Ark. 283, at 7, 556 S.W.3d 509, 514 (cleaned up). Thus, an allegation of "ultra vires" or "illegal" acts by the State remains an exception to sovereign immunity that even following *Andrews* is "alive and well." *See Monsanto*, 2019 Ark. 194, at 9, 576 S.W.3d at 13; *see also Ark. Game & Fish Comm'n v. Heslep*, 2019 Ark. 226, at 6, 577 S.W.3d 1, 5 (noting exception to sovereign immunity for state's illegal acts); *Ark. State Plant Bd. v. McCarty*, 2019 Ark. 214, at 7, 576

7

S.W.3d 473, 477 (same). Even so, a plaintiff must still comply with our fact-pleading rules when alleging an exception to sovereign immunity. *See Williams v. McCoy*, 2018 Ark. 17, at 3, 535 S.W.3d 266, 268.

Part II. *Administrative Procedure Act (Section 212)*

Section 212 of the APA permits judicial review of agency adjudications. Ark. Code Ann. § 25-15-212(a). But an adjudication takes place only following "the final disposition . . . in which the agency is required by law to make its determination after notice and hearing." Ark. Code Ann. § 25-15-202(1), (6) (Supp. 2019). Thus, only "quasi-judicial" agency functions support further judicial review. *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, at 7, 403 S.W.3d 559, 562. These functions will generally include hearing testimony, making findings of fact, rendering legal conclusions, and recording the proceedings. *See Sikes v. Gen. Publ'g Co.*, 264 Ark. 1, 7, 568 S.W.2d 33, 36 (1978).

We addressed a similar challenge to the Commission's licensing decision in *Arkansas Department of Finance and Administration v. Naturalis Health, LLC*, 2018 Ark. 224, 549 S.W.3d 901. There, a failed cultivation-facility applicant sued to enjoin the Commission; it alleged the Commission's application process was flawed, biased, and arbitrary. The circuit court agreed and declared the Commission's licensing decision void and enjoined the Commission from issuing further licenses.

We reversed and dismissed, concluding that the circuit court lacked subject-matter jurisdiction. We noted that courts lack "jurisdiction to examine administrative decisions of state agencies." *Id.* at 6, 549 S.W.3d at 906. We explained that the courts have limited

8

review under APA section 212 only for quasi-judicial "adjudications"; if there is no agency adjudication, then there is no action for a court to review. *Id.* at 7, 549 S.W.3d at 906. We held that the Commission's decision to grant cultivation licenses to certain applicants was not an adjudication and that as a result, the circuit court lacked subject-matter jurisdiction under section 212. *Id.* at 7–8, 549 S.W.3d at 906.

*Naturalis* controls here to the extent Carpenter Farms' complaint rests on section 212. Indeed, all agree that the Commission's decision to disqualify Carpenter Farms took place without notice or a hearing. Nor did the Commission hear testimony, make factual findings, or render legal conclusions. The Commission issued a disqualification letter and never acted quasi-judicially. Indeed, the Commission's decision to disqualify Carpenter Farms took place administratively, and no party suggests that the Commission must make this "determination [disqualification] *after* notice and hearing," the statutory definition of an adjudication.[1] We therefore reverse and dismiss Carpenter Farms' complaint to the extent it rests on section 212 as a jurisdictional basis.

Part III. *Administrative Procedure Act (Section 207)*

A. Application Challenge

---

[1]Notably, the model rules, which Carpenter Farms urges the Commission to adopt, do not define denials or disqualifications of licenses as adjudications. The comment to the model rules states that "[h]earings to revoke a license or permit or to impose a civil penalty are adjudicative hearings" and that "[a]n agency acts in a quasi-judicial capacity when it conducts an adjudicative hearing." Model Rules of Procedure for Regulatory and Licensing Agencies, § (VII), cmt. (2015). The model rules provide for judicial review when a license is revoked; but the model rules do not provide for review when the agency disqualifies or denies an application.

Section 207 permits an injured party to bring a declaratory-judgment action challenging a rule's "validity or applicability." Ark. Code Ann. § 25-15-207(a). Carpenter Farms maintains that the MMC Rules require the Commission to acknowledge its score, despite the Casteel disqualification. But this is an unauthorized challenge to an agency's *application* of a rule. *Naturalis* prohibits Carpenter Farms' complaint to the extent that it challenges under section 207 the Commission's application of its own rules.

We held in *Naturalis* that an agency's case-specific "application" of its rules was not subject to judicial review under section 207. 2018 Ark. 224, at 9, 549 S.W.3d at 907. A court cannot review "how the rule should be applied given a particular set of facts or circumstances." *Id.* Carpenter Farms here alleges, in part, that the Commission should have acted differently—that is, scored the application per MMC Rules—given the set of circumstances surrounding the submission. *Naturalis* prohibits this type of challenge.

## B. Applicability or Validity Challenge

Carpenter Farms makes another allegation absent from *Naturalis*: the Commission failed to adopt model rules promulgated by the Attorney General under section 215 of the APA. Unlike the above challenge to a rule's application, this is a permissible challenge to the validity of the MMC Rules. Under section 215, the Attorney General should publish model rules, and the agency "*shall* adopt . . . those model rules that are practicable." Ark. Code Ann. § 25-15-215(b)(1) (emphasis added). If the agency adopts different rules, it "*shall* state the reason why the relevant portions of the model rules are impracticable." Ark. Code Ann. § 25-15-215(b)(2) (emphasis added). Carpenter Farms asserts that the Attorney

General has indeed promulgated model rules that the Commission both failed to adopt and failed to explain why that decision was impracticable.

In *Naturalis*, this court did not address a challenge involving section 215. And Carpenter Farms' claim that the Commission failed to follow a mandatory provision of the APA is an allegation of ultra vires or illegal action, an exception to sovereign immunity. *See Monsanto*, *supra*; *Heslep*, *supra*; and *McCarty*, *supra*. Carpenter Farms maintains that the MMC Rules were invalid because (i) they are not the ones promulgated by the Attorney General and (ii) the Commission failed to explain why it adopted rules different from the model. We agree that this particular claim can proceed under section 207 because it involves the applicability or validity of the Commission's rules, rather than the Commission's application of those rules to Carpenter Farms' set of circumstances.

The State challenges this in several ways. First, it argues that Carpenter Farms' application was "disqualified" not "denied." This distinction is semantic. From Carpenter Farms' perspective, a denial and disqualification are substantively the same thing—Carpenter Farms cannot obtain a cultivation license. This argument lacks merit.

Second, the State argues that Carpenter Farms lacks standing and failed to exhaust its administrative remedies. But these issues are not ripe in an interlocutory appeal regarding sovereign immunity. Only sovereign immunity is properly before this court under Arkansas Rule of Appellate Procedure–Civil 2(a)(10). *Ark. Dep't of Human Servs. v. Fort Smith Sch. Dist.*, 2015 Ark. 81, at 10, 455 S.W.3d 294, 301; *Williams*, 2018 Ark. 17, at 5, 535 S.W.3d at 269; ("[W]e do not hear on interlocutory appeal any issue other than

11

whether the circuit court erred . . . on the issue of sovereign immunity."); *see also Ark. St. Bd. of Ed. v. Magnolia Sch. Dist.*, 298 Ark. 603, 604, 769 S.W.2d 419, 420 (1989) (holding party cannot challenge standing in an interlocutory appeal regarding class certification); *Searcy Healthcare Ctr., LLC v. Murphy*, 2013 Ark. 463, at 6–7 (holding party cannot challenge standing in an interlocutory appeal from the denial of a motion to compel arbitration).

Finally, the State asserts that the Commission's rule-making authority pronounced in Amendment 98 abrogated section 215's requirement to adopt model rules. But the Amendment lacks such broad language. It states merely that "the commission . . . shall adopt rules necessary to . . . [c]arry out the purposes of . . . and perform its duties under this amendment." Ark. Const. amend. 98, § 8(b)(1). Indeed, this provision even goes further and provides that "rules adopted under this section are rules as defined in the [APA]." *Id.* § 8(b)(2). If anything, the Commission's rules should be in concord with the APA.

In conclusion, the circuit court lacked subject-matter jurisdiction over Carpenter Farms' challenge to the Commission's application of its own rules pursuant to *Naturalis*. But Carpenter Farms' allegation that the Commission failed to adopt model rules as required by law, or give a reason for not doing so, can proceed in the face of sovereign immunity under the "ultra vires" or "illegal acts" exception.

Part IV. MMC *Rule 19*

Carpenter Farms also asserts that the Commission's own internal rule established an independent basis for the circuit court's subject-matter jurisdiction. We disagree. Under MMC Rule 19, the Commission provides that if it "denies an application for a cultivation license, the commission's decision may be appealed to . . . circuit court." The *Naturalis* court did not review this issue because, there, the Commission had not yet issued denial letters. *Naturalis*, 2018 Ark. 224, at 10, 549 S.W.3d at 908. But here, Carpenter Farms received a disqualification letter. The issue is live, despite the State's contention that Carpenter Farms cannot oblige itself of this rule because its application was "disqualified" rather than "denied."

Even so, the Commission's rule violates our holding in *Andrews* that the legislature's waiver of sovereign immunity in cases involving the minimum-wage act violated the Arkansas Constitution. 2018 Ark. 12, at 10, 535 S.W.3d at 622. If the legislature cannot create a waiver by statute, then neither can the executive branch (here, the Commission) by its own internal rule.

Indeed, a court obtains subject-matter jurisdiction through the Arkansas Constitution or by constitutionally authorized statutes or court rules. *Edwards v. Edwards*, 2009 Ark. 580, at 4, 357 S.W.3d 445, 448. A state agency's internal rule cannot independently establish subject-matter jurisdiction in the judicial branch. MMC Rule 19 cannot and does not create an independent basis for the circuit court's jurisdiction that does not otherwise exist under the APA. And because MMC Rule 19 would expand

judicial review from that authorized under the APA, the lawsuit cannot go forward with Rule 19 as the jurisdictional hook.

Part V. *Declaratory Judgment (Equal Protection)*

Carpenter Farms titled its complaint, in part, as one seeking declaratory judgment. It pled specifically that the Commission violated the Equal Protection Clauses of the U.S. and the Arkansas Constitutions. Its prayer for relief requests a declaratory judgment that the Commission's disqualification was contrary to law. "Pleadings are to be liberally construed and are sufficient if they advise a defendant of his obligations and allege a breach of them." *Rabalaias v. Barnett*, 284 Ark. 527, 528, 683 S.W.2d 919, 921 (1985).

The circuit court has subject-matter jurisdiction to determine whether the Commission violated Carpenter Farms' constitutional rights in this regard. *See* Ark. Code Ann. §§ 16-111-101 et seq. (Repl. 2016). Carpenter Farms may pursue relief under the declaratory-judgment cause of action against the State. *See, e.g., McGhee v. Ark. State Bd. of Collection Agencies*, 375 Ark. 52, 289 S.W.3d 18 (2008) (striking down check-cashers act in declaratory-judgment action); *Dep't of Human Servs. v. Howard*, 367 Ark. 55, 238 S.W.3d 1 (2006) (striking down a DHS regulation in a declaratory-judgment action); *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002) (striking down anti-sodomy statute in declaratory-judgment action).

As explained above, our sovereign-immunity doctrine allows this claim because it is premised on the State's unconstitutional actions. *See Martin*, 2018 Ark. 283, at 7, 556 S.W.3d at 514. One caveat is that a complaint alleging illegal and unconstitutional acts

14

must comply with our fact-pleading rules. *See Williams*, 2018 Ark. 17, at 3, 535 S.W.3d at 268. At the interlocutory stage, Carpenter Farms meets this initial threshold. An equal-protection claim must first show that there is state action that differentiates among individuals. *Ghegan & Ghegan, Inc. v. Barclay*, 345 Ark. 514, 521, 49 S.W.3d 652, 656 (2001). Carpenter Farms has at least made a plausible case that there is state action (by the Commission) that differentiates among individuals (the 100 percent minority-owned applicants and everyone else).

Carpenter Farms alleged specific facts absent from other cases in which we have dismissed at the complaint stage. *See Ark. State Claims Comm'n v. Duit Constr. Co.*, 2014 Ark. 432, 445 S.W.3d 496. There, the plaintiff asserted, without factual support, that the claims commission recommended higher damages awards to resident contractors than to nonresident contractors. *Id.* at 8, 445 S.W.3d at 503. In contrast, Carpenter Farms here highlighted multiple, similar defects in other applications that did not result in disqualification.

Whether this allegation can be proved and the appropriate remedy are questions left for another day. For now, Carpenter Farms has alleged a plausible equal-protection violation. Liberally construing the allegations of disparate treatment in its complaint, we hold that Carpenter Farms may proceed with a declaratory-judgment action that the Commission violated equal protection.[2]

---

[2] The State argues for the first time in its reply brief that all claims should be dismissed against DFA and ABC. But a new issue may not be raised for the first time in the

Part VI. *Reassignment*

The State also argues that if the case can proceed, we should reassign this matter to a different circuit judge. The State maintains that this judge should be prohibited from all cases involving the Attorney General's Office. The State complains that the judge exhibited injudicious behavior. It highlights specifically what it characterizes as the judge's demeaning behavior during a hearing in this case.

The legal basis for removing the judge, the State argues, rests with Amendment 80. Amendment 80 establishes this court's general superintending control over all the courts of the state. Ark. Const. amend. 80, § 4. "Superintending control is an extraordinary power that is hampered by no specific rules or means." *Parker v. Crow*, 2010 Ark. 371, at 5, 368 S.W.3d 902, 906. "By virtue of the jurisdiction, the court may invent, frame, and formulate new and additional means, writs, and processes." *Id.* (cleaned up). Though we have the power to do so, we reject the State's plea to order reassignment because that remedy is not warranted on this record.

Part VII. *Conclusion*

To conclude: we affirm on the limited basis of Carpenter Farms' section 207 challenge to the validity and applicability of the Commission's own rules. But any claims arising from section 212 or MMC Rule 19 are reversed and dismissed. We remand with

---

appellant's reply brief. *JurisDictionUSA, Inc. v. Loislaw.com, Inc.*, 357 Ark. 403, 409, 183 S.W.3d 560, 564 (2004). We therefore need not parse our holding among the different defendants.

instructions to permit the complaint to go forward only under section 207 and the declaratory-judgment action alleging an equal-protection violation.

Affirmed in part; reversed and dismissed in part; remanded.

BAKER, HUDSON, HART, WYNNE, and WOMACK, JJ., concur in part; dissent in part.

**KAREN R. BAKER, Justice, concurring in part and dissenting in part.** While I concur in the result reached by the majority in Parts II, III(A), IV, and VI, I dissent from the remainder of the opinion. Because I cannot agree with the majority's interpretation of the precedent established in *Board of Trustees of the University of Arkansas v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616, I would also reverse and dismiss Part III(B) and Part V for the reasons explained below.

This majority is inconsistent with *Andrews*. As I explained in my dissent in *Arkansas Oil & Gas Comm'n v. Hurd*, 2018 Ark. 397, at 1, 564 S.W.3d 248, 249, *Andrews* does not provide for exceptions to its broad language barring suit against the State. In *Andrews*, the court held that "never means never," and did not identify exceptions. Accordingly, despite the majority's attempt to narrow *Andrews*, the broad language of *Andrews* does not permit such suit. Here, like Hurd, Carpenter Farms alleges that the appellants' actions were beyond the appellants' authority as a state board and acted in an ultra vires manner. Therefore, state conduct is at issue, and *Andrews* bars suit.

Accordingly, I concur in part and dissent in part.

**ROBIN F. WYNNE, Justice, concurring in part and dissenting in part.** I join Part III of the majority opinion allowing Carpenter Farms to challenge the validity and

17

applicability of the Medical Marijuana Commission's rules under Arkansas Code Annotated section 25-15-207. I also join Part VI on the reassignment issue. But I respectfully dissent from the majority's holding in Part II because I would hold that the circuit court has jurisdiction under Arkansas Code Annotated section 25-15-212 to review the MMC's denial of Carpenter Farms' application for a cultivation license.

Arkansas Code Annotated section 25-15-212 vests circuit courts with jurisdiction to review agency actions, providing that "[i]n cases of adjudication, any person . . . who considers himself or herself injured in his or her person, business, or property by final agency action shall be entitled to judicial review of the action under this subchapter." Ark. Code Ann. § 25-15-212(a). "'Adjudication' means an agency process for the formulation of an order." Ark. Code Ann. § 25-15-202(1)(A). "'Order' means the final disposition of an agency in any matter other than rulemaking, including licensing and rate making, in which the agency is required by law to make its determination after notice and hearing." Ark. Code Ann. § 25-15-202(6).

In *Arkansas Department of Finance & Administration v. Naturalis Health, LLC*, 2018 Ark. 224, 549 S.W.3d 90, this court examined whether section 25-15-212 allows judicial review of MMC licensing decisions. In *Naturalis*, we explained that judicial review under the Administrative Procedure Act is limited to agencies' judicial functions, which are basically adjudicatory or quasi-judicial in nature. *Id.* at 6–7, 549 S.W.3d at 906. In the case of an applicant who did not receive a cultivation license, but was not formally denied one either, we identified no adjudicatory or quasi-judicial action on the part of the MMC. We

18

concluded that because no adjudication occurred at the agency level, judicial review was not available under section 25-15-212. *Id.* at 8, 549 S.W.3d at 906.

Relying on *Naturalis*, the majority concludes that the MMC's decision on Carpenter Farms' license application is not an adjudication subject to judicial review. But *Naturalis* can be distinguished. The plaintiff in *Naturalis* had not been denied a license; rather, it simply had not been granted one. There was no final agency decision to review. In contrast, the MMC issued a formal letter denying Carpenter Farms' license application.

The MMC denied Carpenter Farms' application without providing notice and a hearing and now argues that the circuit court cannot review that decision because it did not provide notice and a hearing. I disagree. An agency cannot evade judicial review of its licensing decisions simply by adopting rules that do not allow for notice and a hearing. In my view, the MMC's decision to deny Carpenter Farms' application for a cultivation license is an order subject to judicial review. It is a final determination. It is not legislative, such as rulemaking, or administrative, such as terminating an employee. I would conclude that the MMC's denial of Carpenter Farms' license application is a final agency decision subject to judicial review, so sovereign immunity would not bar Carpenter Farms' action under section 25-15-212. *See Ark. Oil & Gas Comm'n v. Hurd*, 2018 Ark. 397, at 11, 564 S.W.3d 248, 255.

Because I would conclude that the circuit court has jurisdiction under section 25-15-212, I would decline to consider whether MMC Rule 19 independently confers jurisdiction. And while I agree with the majority that Carpenter Farms may proceed with

its equal protection claim, I think judicial review of this claim is available under section 25-15-212. Therefore, I do not join Parts IV and V of the majority opinion.

HUDSON and HART, JJ., join.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part.** I respectfully disagree with the majority's conclusion that Carpenter Farms may pursue declaratory judgment for MMC's alleged failure to comply with the model rule requirement under Arkansas Code Annotated section 25-15-215.  Because the circuit court does not have jurisdiction over this claim, it should be reversed and dismissed.  I join the remainder of the majority's opinion in full.

Under Amendment 98 to the Arkansas Constitution, the MMC is vested with broad discretion to adopt any rules necessary to carry out the purposes of the amendment and to perform its duty to issue cultivation licenses.  *See* Ark. Const., amend. 98, § 8(b).  This discretion is guided by the extensive requirements established by the amendment. Most relevant here, Amendment 98 commands the commission to adopt rules governing "[t]he manner in which the commission considers applications for and renewals of licenses for dispensaries and cultivation facilities."  Ark. Const., amend. 98, § 8(d).  It also requires that the MMC adopt rules governing "[a]ny other matters necessary for the commission's fair, impartial, stringent, and comprehensive administration of this amendment."  *Id.* Because the MMC's creation and procedural rulemaking authority expressly derives from the constitution, it is not subject to the APA's model rules of procedure provision.

The APA does, however, have limited applicability to the MMC. Rules adopted by the MMC under Amendment 98 are "rules as defined in the [APA]." Ark. Const., amend. 98, § 8(b)(2); *see also* Ark. Code Ann. § 25-15-202(9)(a) (APA definition of "rule"). To the limited extent the APA applies to MMC rules, it provides a process for the formulation, amendment, or repeal of the agency's rules. *See, e.g.*, Ark. Code Ann. § 25-15-204 ("Rules—Procedure for Adoption"). It does not, however, impose requirements as to the actual rules the agency must adopt. Accordingly, to the extent Carpenter Farms disagrees with an MMC rule or believes additional rulemaking is required, it is not without a remedy. It may petition MMC for the "issuance, amendment, or repeal of a rule." Ark. Code Ann. § 25-15-204(d)(1). Should the agency refuse to act, judicial review is available under section 25-15-214. Because Carpenter Farms did not avail themselves to this procedure prior to bringing this action, the circuit court does not have jurisdiction to consider the claim.

*Leslie Rutledge*, Att'y Gen., by: *Jennifer L. Merritt*, Sr. Att'y Gen., for appellants.

*Law Offices of Matt Simmons, Esq.*, by: *Matt Simmons, pro hac vice*; and *R. Victor Harper, P.A.*, by: *R. Victor Harper*, for appellee.